## COMMONWEALTH *vs.* VERMONT AND MASSACHUSETTS RAILROAD COMPANY.

A railroad corporation, in consideration of the payment to them, by a person, of a certain sum of money per year in quarterly instalments, and of his agreement to supply the passengers on one of their trains with iced water, issued season tickets to him quarterly for his passage on any of their regular trains, and permitted him to sell popped corn on all their trains. *Held,* that his relation to them, while travelling upon the railroad under this contract, was that of a passenger and not of a servant.

At the trial of an indictment of a railroad corporation on the Gen. Sts. *c.* 63, § 97, for causing the death of a passenger by gross negligence of their servants, all the facts were agreed, and it appeared upon the statement of them that the passenger was killed in a collision of a train with a hand-car, which the track-master suffered to be on the track through a mistake in time, occasioned by his failure to observe correctly the hour indicated by his watch. *Held,* that the defendants had no ground of exception to the refusal of a request for a ruling that there was no evidence of negligence, and to the submission of that question to the jury.

A memorandum indorsed on a season ticket issued by a railroad corporation, that "the corporation assumes no liability for any personal injury received while in a train to any season ticket holder," is no defence to an indictment of the corporation on the Gen. Sts. *c.* 63, § 97, for causing the death of the ticket-holder by gross negligence of their servants while he was a passenger in a train upon the railroad.

INDICTMENT on the Gen. Sts. *c.* 63, § 97, to recover a fine for the use of the widow and children of George A. Johnson upon averments that he was killed through the gross negligence of servants or agents of the defendant corporation while he was a passenger upon their railroad. At the the trial in the superior court,

before *Pitman*, J., " no evidence was introduced, but a statement of facts was agreed to before the jury," the substance of which was as follows :

On October 17, 1868, Johnson, who had then for several years been selling popped corn upon the defendants' trains, submitted to them an offer in writing, to furnish the ice and supply the passengers with iced water, and " continue to pay " the defendants " thirty dollars per quarter as heretofore," " for the privilege of riding and selling pop-corn on all passenger trains " upon their railroad, " and such special trains as permission can be obtained [for] on application ; " or if this proposition should not be satisfactory, to pay the defendants " for the above named privileges forty dollars per quarter, commencing April 1, 1869, providing the watering of the passengers and the furnishing of ice be stricken out." The defendants acted on the offer by giving Johnson notice " that he would be charged two hundred dollars per annum for right to sell corn in cars whole length of road," " and he to do no watering passengers in cars."

This agreement lasted without modification until the summer of 1869, when the extra trains run upon the railroad had become very numerous. " He then agreed to supply water to the passengers of the morning train up, as far as the [Hoosac] tunnel, if he could have permission to sell popped corn on those trains, which privilege he did not have under the original agreement ; and this proposition was accepted, and he watered the train during that summer and fall. Water is not furnished in the winter. No particular time was mentioned in this agreement ; nor was any other agreement made ; but he had again begun to supply water to the passengers at the time of the happening of an accident" on June 16, 1870, in which he lost his life " by being precipitated through a bridge with a train of the defendants' cars which was running on their road between Athol and Royalston."

" The accident was occasioned by a collision between the train and a hand-car, driven by a track-master and workman in the employ of the defendants. The track-master had charge of the repairs of the track between Athol and Royalston, and on the morning of the accident had gone on a hand-car from Royalston

to Athol, and was returning with one of the workmen to the place where a gang of his hands were employed. He thinks he examined his watch before he started; and is certain that he looked at it while on his return, and read the time as five minutes to ten. In reality, it was ten minutes to eleven; and the watch indicated that time; and it was within the running time of the morning train between Royalston and Athol. The accident was wholly occasioned by the foregoing conduct of the track-master, and no other negligence in the case is charged."

The season tickets issued by the defendants were in form as follows: "Vermont & Massachusetts and Troy & Greenfield Railroads. Season Ticket. Pass          between
and        , until        , 18   . Fitchburg,    18   ;" and were indorsed with the following among other provisions: "This ticket enables the person whose name it bears to pass between the stations named, upon regular passenger trains, but not on extra trains. A new ticket must be obtained on or before the day that the old ticket expires, or the conductor will collect the regular fare. The corporation assumes no liability for any personal injury received while in a train to any season-ticket holder."

" Johnson had had from the year 1857 tickets like the above. He did not always renew his ticket when the quarter expired, as it was sometimes inconvenient for him to pay the money. But he always came to the railroad office at the end of each quarter, and if he did not pay would say that he would pay soon. If he did not advance the money, no ticket was actually issued, but it was understood that he should continue riding on the same terms as previously. He paid for the quarter he was riding upon May 16. He should have paid April 1. Whether he actually had a ticket at the time of the accident is not known. He was about fifty years of age; left a wife, and one child, about fifteen years old; and was earning, at the time of his death, between $2000 and $2500 per annum in his business."

The defendants requested the judge to rule that the indictment could not be sustained on these facts. But he refused to do so, and ruled " that the corporation was liable if the jury should find that the track-master, in occasioning the accident, was guilty of

gross negligence or gross carelessness;" and "this was the only issue argued to the jury," who returned a verdict of guilty, and the defendants alleged exceptions.

*D. S. Richardson & C. H. B. Snow*, for the defendants. Under his modified contract, Johnson was a servant of the defendants, and not a passenger. If he had committed a tort in the course of his employment to supply water to passengers, as for instance by carelessly or purposely defacing the dress of one of them by spilling water on it, the defendants would have been liable. Even under his original offer, he was not a passenger. His riding on the trains was merely incidental to the selling of the popped corn. His contract did not contemplate any such liability of the defendants to him for changing the time of running trains without notice to him, as was enforced in *Sears* v. *Eastern Railroad Co.* 14 Allen, 433; or any liability under the Gen. Sts. *c.* 63, §§ 110, 111. The nature of his employment, the manner of his compensation, and the fact that he was not engaged in the active management of the trains, do not affect his relation to the defendants. *Farwell* v. *Boston & Worcester Railroad Co.* 4 Met. 49. *Gillshannon* v. *Stony Brook Railroad Co.* 10 Cush. 228. *Seaver* v. *Boston & Maine Railroad,* 14 Gray, 466. *Gilman* v. *Eastern Railroad Co.* 10 Allen, 233. *Waller* v. *South Eastern Railway Co.* 2 H. & C. 102. *Morgan* v. *Vale of Neath Railway Co.* Law Rep. 1 Q. B. 149. *Tunney* v. *Midland Railway Co.* Law Rep. 1 C. P. 291.

The question of negligence should not have been submitted to the jury. All the facts having been agreed, it was a question of law for the court. *Gavett* v. *Manchester & Lawrence Railroad Co.* 16 Gray, 501. *Seaver* v. *Boston & Maine Railroad,* 14 Gray, 466.

*G. A. Torrey*, for the Commonwealth.

AMES, J. In order to maintain this indictment, it should be made to appear that the person for whose death it was brought was a passenger upon the defendants' road at the time of the accident, and that his death was occasioned by the negligence or carelessness of the company, or the unfitness or gross negligence or carelessness of its servants or agents. Gen. Sts. *c.* 63, § 97.

The defendants object that, upon the facts reported, neither of the two conditions, upon which their liability depends, was fulfilled; that the man who lost his life was not a passenger, but a servant or workman of the company; and that there was no legal and competent evidence of negligence on the part of themselves or their servants or agents. We think that neither of these objections can be maintained.

It appears that he made to the defendants on October 17, 1868, an offer to pay them a certain sum of money "for the privilege of riding and selling pop-corn on all passenger trains" on their road, giving them the alternative however of his having the same privilege at a price ten dollars less per quarter, if he furnished ice and water for the passengers during the summer months. In reply to this offer, he was notified in writing that "he would be charged two hundred dollars per annum for right to sell corn in cars whole length of road," "and he to do no watering passengers in cars." Under this agreement he travelled in the cars until the following summer, when he made a further proposition, to furnish ice and see that water was supplied to the passengers of the morning train up as far as the tunnel, if he could have permission to sell his corn in the extra trains, which privilege he did not have under the original agreement. This proposition was accepted and acted upon. No particular time was mentioned in this agreement, and no other agreement was made; but in the summer of 1870 he had begun supplying water to the passengers, as in the preceding season.

It appears that the selling of corn to the passengers in the trains had been his regular business for a long time, and that in order to follow that business he held a season ticket, renewed every quarter, and was a traveller over the road substantially every day. It appears to us that in this state of facts he must be considered as a passenger, within the meaning of the statute. It certainly can make no difference, that his object in travelling was to sell his merchandise while in the act of travelling; and that he had no other purpose in going over the road. Like other season ticket holders, he paid the defendants for the privilege of passing and repassing regularly over the road, and was at liberty

to go or not as he pleased. It appears to us that the services which he rendered, in furnishing water to passengers, were intended as a compensation for some increase in his privileges. The fact remains, that he was travelling on his own business, and not on that of the defendants. Even if the report states what amounts to an implied renewal of the contract of the previous year, the travelling and the accommodation to passengers during the summer months were merely incidental to his regular business, and were for his own convenience and not for the defendants'.

Upon the other point, we think it was entirely a question of fact whether negligence on the part of the defendants, within the meaning of the statute, was shown to have existed. We cannot say, upon the report, that there was no evidence to submit to the jury upon that question. On the contrary, there was evidence tending to show carelessness on the part of the track-master in the management of a hand-car, and that such negligence was the cause of the accident. The question was therefore properly submitted to the jury. *Gaynor* v. *Old Colony & Newport Railway Co.* 100 Mass. 208.

We think, furthermore, that none of the conditions printed upon the back of the ticket could have the effect to relieve the defendants from their legal liability, under a penal statute, for gross negligence and carelessness.          *Exceptions overruled.*