ANNAS, Administratrix, etc., Respondent, vs. THE MILWAUKEE & NORTHERN RAILROAD COMPANY, Appellant.

*September 23 — November 3, 1886*

RAILROADS: PRACTICE: DAMAGES. *(1) Free pass: Contract exempting from liability for negligence. (3) Collision: Evidence of gross negligence: Court and jury. (2) Setting aside special finding: New trial. (4, 6) Damages for causing death. (5) Evidence: Immaterial error. (7) Reversal of judgment: Inadvertent error in charge to jury.*

1. Where a passenger is carried gratuitously the railroad company may by contract relieve itself from all liability to him for injuries caused by the negligence of its employees, except where such negligence is gross or criminal.

2. When one of the findings of a special verdict is set aside, a new trial should be ordered unless it appears that such finding was wholly immaterial.

3. The evidence in this case (showing, among other things, that a rescuing engine with a snow-plow approached a stalled train during a snow-storm without slackening speed, and ran into such train, killing a passenger in the rear car thereof) is *held* sufficient to go to the jury on the question of the gross negligence of the employees of the company, even though a finding that the men on the engine could have seen the stalled train in time to have stopped might not be warranted by the evidence.

4. In an action to recover damages on account of the death of her husband, a widow may show that she had no means of support except what her husband furnished her.

5. The improper admission of evidence as to the rate of speed of a locomotive is *held* to have been an immaterial error where there was a special finding on that subject which was evidently not based on such evidence.

6. A verdict for $2,500 damages for the death of a workman fifty-five years old, in fair health, who could earn $2.25 per day of ten hours, and whose family was to a large extent dependent upon his labor for support, is *held* not excessive.

7. A judgment will not be reversed for an inadvertent error of the trial judge in stating the law to the jury, when such mistake was immediately and fully corrected by the rest of the charge.

APPEAL from the Circuit Court for *Brown* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was brought by the respondent to recover damages for the death of her husband, which she alleges was caused by the negligence of the appellant, its servants, agents, or employees; he being, at the time he received the injuries which caused his death, a passenger on one of the appellant's trains, and being transported, as such passenger, from De Pere to the city of Green Bay, this state. The material facts in the case are the following:

*First.* The deceased, at the time he received his injuries, was riding in the caboose attached to a freight train, and was being carried from De Pere to Green Bay.

*Second.* He was traveling upon a free pass, and had paid no consideration for such transportation by the company. On the back of the pass, signed by the deceased, was the following agreement, plainly printed thereon:

"The person accepting this pass assumes all risk of accident, and expressly agrees that the company shall not be liable, under any circumstances, whether of negligence of their agents or otherwise, for any injury to the person, or any loss or damage to the property, of the passenger using this pass. This pass will be forfeited if presented by any

other than the person named thereon.  I accept all the above conditions.

[Signed]                              " J. A. ANNAS."

*Third.*  That after the train had left De Pere and proceeded on its way towards Green Bay about a mile and a half, it was stalled in the snow, and could proceed no further. Thereupon a brakeman was sent back towards De Pere to procure aid to relieve the train.  This brakeman met an engine, with a snow-plow attached, on the road between the stalled train and De Pere, or at De Pere.  He communicated the fact that the train was stalled in the snow, and undertook to inform the conductor and engineer where the stalled train was located.  He then got on the engine with the snow-plow attached.  That engine then ran north towards the stalled train, and, without stopping, ran into the rear end of the caboose attached to the stalled train, breaking the rear end of the caboose, and injuring the deceased so that he died in a short time thereafter.

*Fourth.*  That it was snowing at the time the accident took place, and the wind was blowing so as to render it difficult, if not impossible, for those on the engine behind the snow-plow to see the stalled train, towards which they were approaching, when such engine was in motion; that there was no flagman placed on the track behind the stalled train to give warning to the approaching engine and snow-plow, nor was there any bell rung or whistle sounded on the stalled train.  The brakeman who went back for the snow-plow says he placed three torpedoes on the track behind the stalled train, but the evidence shows that these were entirely inadequate to give warning to the approaching engine, and were probably swept off by the snow-plow and not exploded, or, if exploded, the wind and drifting snow prevented those on the engine behind the snow-plow from hearing the explosion.

Annas, Adm'x, etc. vs. The Milwaukee & Northern R. Co.

Upon the trial a special verdict was rendered by the jury as follows:

" *Question* 1. Was the defendant, or its employees, guilty of any carelessness which caused the death of the plaintiff's intestate, James A. Annas? *Answer.* Yes. *Q.* 2. If to the foregoing question an affirmative answer be given, then who was the negligent employee? *A.* Engineer, brakeman, and conductor. *Q.* 3. If to the first question an affirmative answer be given, then state in what did the negligence consist. *A.* The brakeman is guilty in not locating the exact location of the stalled train. The engineer and conductor did not use necessary precaution to prevent the collision. *Q.* 4. If your answer to the first question be 'Yes,' was the carelessness ordinary or gross? *A.* Gross. *Q.* 6. What was the rate of speed — how many miles per hour — at which such engine was running at the time it struck such caboose? *A.* Ten miles. *Q.* 7. Could the engineer of the engine to which the snow-plow was attached have seen the caboose in which the said James A. Annas was seated, in time to have stopped his engine before it struck such caboose? *A.* Yes. *Q.* 8. Was the deceased, James A. Annas, guilty of any want of ordinary care, however slight, contributing to the injury? *A.* No. *Q.* 9. What is the pecuniary loss to the widow of said deceased, James A. Annas, as a direct consequence of his death? *A.* $3,500."

Exceptions were taken to the several findings of the jury as being unsupported by the evidence, and a motion was made to set aside the verdict, and for a new trial, for the reason that the verdict was wholly unsupported by the evidence, and for errors committed and exceptions taken on the trial.

After hearing this motion, the learned circuit judge set aside the fourth and seventh findings of the special verdict as unsupported by the evidence. The learned circuit judge was of the opinion that there was not sufficient evidence to

sustain the seventh finding, viz.: "That the engineer of the engine to which the snow-plow was attached could have seen the caboose in which the said James A. Annas was seated, in time to have stopped his engine before it struck the caboose;" and he set aside the fourth finding, that those in charge of the snow-plow and engine were guilty of gross negligence or carelessness in running into the caboose. The learned circuit judge stated that he set aside the fourth finding because he inferred that the jury based that finding on the finding that the engineer on the engine attached to the snow-plow could have seen the caboose in time to have stopped his engine before it struck the caboose; and, as he was of the opinion that there was no evidence to sustain the seventh finding, and as the fourth was based solely on that, it was also unsupported.

After setting aside these findings, the learned circuit judge, instead of granting a new trial, ordered judgment to be entered, upon the verdict so corrected, for the plaintiff, on the condition that the plaintiff should remit $1,000 from the damages found, the learned circuit judge being of the opinion that the damages were excessive; and thereupon the plaintiff remitted the $1,000, and entered judgment against the defendant for the sum of $2,500 and costs, and from that judgment the defendant appeals to this court.

*Geo. H. Noyes*, for the appellant, contended, *inter alia*, that it was error to allow the plaintiff to testify that she had no other means of support except what her husband furnished her. *Rooney v. Mil. Chair Co.* 65 Wis. 397; *Pennsylvania Co. v. Roy*, 102 U. S. 451; *Chicago v. O'Brennan*, 65 Ill. 160; *C. & N. W. R. Co. v. Moranda*, 93 Ill. 302; *Beems v. C., R. I. & P. R. Co.* 58 Iowa, 150; 3 Suth. on Dam. 727. To the point that a contract by which, in clear terms, a party assumes the risk of injuries from the negligence of the servants of another, indorsed on a free pass issued without other consideration than that expressed

in the written instrument, is not against public policy, and is binding on the person accepting and agreeing to the same, in the absence of *wilful* or *gross* negligence on the part of the railroad company or its employees, he cited, besides cases cited in the opinion, *Poucher v. N. Y. C. R. Co.* 49 N. Y. 263; *Wescott v. Fargo*, 61 id. 542; *Dorr v. N. J. S. Nav. Co.* 11 id. 485; *Arnold v. Ill. Cent. R. Co.* 83 Ill. 273; *T., W. & W. R. Co. v. Beggs*, 85 id. 80; *Higgins v. N. O., M. & C. R. Co.* 28 La. Ann. 133; *W. & A. R. Co. v. Bishop*, 50 Ga. 465; 23 Cent. L. J. 123; Lawson on Carriers, 27, note 11.

For the respondent there was a brief by *Hudd & Wigman*, and oral argument by *Mr. Wigman*.

TAYLOR, J. From the course pursued by the learned circuit judge it is evident that he did not consider the fourth finding of the special verdict material in sustaining the plaintiff's action. Had he considered it material, he would necessarily have ordered a new trial instead of entering a judgment in her favor, after setting aside the finding as unsupported by the evidence. We will therefore first consider whether it was necessary for the plaintiff, in order to recover in this action, to show that the injury which caused the death of her husband was the result of gross negligence on the part of the defendant, its employees, agents, or servants, or whether she may recover by showing that such injury occurred by a mere want of ordinary care on the part of the defendant, its employees, agents, or servants.

This raises the question whether a railroad company may, in cases where it agrees to transport passengers without compensation, lawfully contract with such persons so as to relieve itself from all liability for any and all injuries which may be inflicted upon them by reason of any carelessness or negligence of its employees, agents, and servants, whatever may be the degree of such carelessness or negligence, or

Annas, Adm'x, etc. vs. The Milwaukee & Northern R. Co.

whether it may so contract as to relieve itself from liability for injuries arising from the mere want of ordinary care on the part of its agents, servants, and employees, and not for injuries resulting from such gross acts of negligence on the part of its agents, servants, and employees as are equivalent to acts of wilfulness or criminal neglect on their part. It would seem that the learned circuit judge must have held in this case that the company could not lawfully contract to relieve itself from any want of ordinary care on the part of its agents, servants, or employees, and that the plaintiff was entitled to recover upon the same evidence that would have entitled her to recover had the deceased not signed the contract above set out. After a careful consideration of the decisions of this court, as well as of the large number of decisions of other courts upon these questions, we have come to the conclusion that the learned circuit judge erred in his decision in this case as to the binding effect of the contract signed by the deceased in this case.

By an examination of all the authorities cited by the learned counsel for the respective parties upon the argument of this case, as well as others not cited, we find that in England, Canada, New York, New Jersey, Connecticut, and West Virginia the courts of those countries and states have held that a railroad company may, upon a proper consideration, lawfully contract to relieve itself for any and all negligence on the part of its servants, employees, and agents, without any regard to the degree of such negligence, and that such contract is not against public policy. These courts have therefore held that where the company agrees to carry a person without compensation, or in different manner and upon cars in which they do not usually carry passengers, the company may lawfully contract for exemption from all liability on account of the carelessness of its agents, servants, and employees. See the following cases cited by the learned counsel for the appellant: *McCawley*

*v. Furness R. Co.* L. R. 8 Q. B. 57; *Hall v. N. E. R. Co.* L. R. 10 Q. B. 437; *Duff v. G. N. R. Co.* 4 L. R. Ir. 178; *Alexander v. W. & R. R. Co.* 3 Strob. Law, 594; *Welles v. N. Y. C. R. Co.* 26 Barb. 641; *Wells v. N. Y. C. R. Co.* 24 N. Y. 181; *Perkins v. N. Y. C. R. Co.* 24 N. Y. 221; *Smith v. N. Y. C. R. Co.* 24 N. Y. 222; *Bissell v. N. Y. C. R. Co.* 25 N. Y. 442; *Magnin v. Dinsmore,* 56 N. Y. 168; *Kinney v. Central R. Co.* 32 N. J. Law, 407; *S. C.* 34 N. J. Law, 513; *Griswold v. N. Y. & N. E. R. Co.* 53 Conn. 371; *B. & O. R. Co. v. Skeels,* 3 W. Va. 556.

The argument in favor of the rule established in the above cases is perhaps as well stated in the case last cited as in any other. The court say: "By the rule of *respondeat superior* a corporation is made liable for the negligence of its servants; but when the principal has done the best he could the rule is technical, harsh, and without any basis of inherent justice. As applicable to corporations, it is of great practical convenience and utility. We do not, therefore, advocate its abolition; but we contend that in a case like the present, where there is no actual fault on the part of the principal, it is reasonable in the eye of the law that the party for whose benefit the rule is given should be allowed to waive it in consideration of a free passage. It is not a case where a party stipulates *for exemption from the legal consequences of his own negligence,* but one where he merely stipulates against a liability for imputed negligence in regard to which there is no actual fault. It is easy to see, therefore, that considerations of public policy have no application to such a case. . . . The foregoing reasoning, as it seems to us, will also furnish a complete answer to the claim that the defendant must be liable on account of the gross negligence of its servants, for it is manifest that the principal is no more culpable in the one case than in the other; and, the rule *respondeat superior* being waived, the protection is complete."

The argument in this case would seem to imply that it is against public policy for a corporation engaged in a public capacity to stipulate against acts of negligence on the part of the corporation itself, and that the agreement is only valid when it relieves the company from the imputed negligence of its servants, etc., and that the company might be liable, notwithstanding an agreement to the contrary, if the injury received was the result of the neglect of the company to employ competent servants or to use safe machinery. These cases are, however, authority for exempting the company from all liability under the facts disclosed in the case at bar.

There is another class of cases which hold that it is against public policy to allow a common carrier to contract to exempt itself from liability, either on account of the negligence of the corporation itself, or of its agents, servants, or employees, without regard to the degree of such negligence or carelessness. It will be found, by an examination of the large number of cases in which this rule is held, that they were cases arising out of the carriage of goods for hire, or where the carriage of the passenger was for a consideration received either directly or indirectly by the carrier. The leading cases upon that subject are the cases of *Railroad Co. v. Lockwood*, 17 Wall. 357, and *Railway Co. v. Stevens*, 95 U. S. 655, and there are numerous decisions in the courts of the different states which are in accord with the rule established in these cases. The cases of *P. & R. R. Co. v. Derby*, 14 How. 486, and *Steamboat "New World" v. King*, 16 How. 469, are in harmony with the rule laid down in 17 Wall. In these cases, the passenger, it is true, was riding on a free pass, but there was no agreement that he should take the risks of accident in consideration of his receiving such pass. The court very properly held that such passenger, in the absence of any special contract, was entitled to the same protection as one

paying for his passage. A similar decision was made by the supreme court of Maryland in 1885. *State, use of Abell, v. West. Md. R. Co.* 63 Md. 433. In this last case the court say they do not decide what the effect of a special contract, on the part of the person receiving the free pass, to assume all the risks of accident, would have been as to the liability of the company.

This court has approved of the rule stated by the court in *Railroad Co. v. Lockwood*, and has held that a carrier for hire cannot relieve himself from liability, even by special contract, for its own, or for the negligence of its servants, so far as the carriage of freight is concerned, or for doing any other act as a common carrier other than the carriage of passengers. See *Thompson v. W. U. Tel. Co.* 64 Wis. 531, 536; *Candee v. W. U. Tel. Co.* 34 Wis. 471; *Hibbard v. W. U. Tel. Co.* 33 Wis. 558. We see no good reason why the same rule should not be applied to the case of the transportation of a passenger for hire. We think, as is said by the supreme court of the United States, "that it is not just or reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibiliy for the negligence of himself or his servants." 17 Wall. 384. But we are also of the opinion that the general rule so laid down must be limited to a case in which the carrier is a carrier for hire, and not when the carriage is gratuitous. The only cases to which we have been cited, or which we are able to find, in which that rule has been applied to the case of a gratuitous carriage, are the following: *Penn. R. Co. v. Butler*, 57 Pa. St. 335; *M. & O. R. Co. v. Hopkins*, 41 Ala. 486, 503; *O. & M. R. Co. v. Selby*, 47 Ind. 471; *Jacobus v. St. P. & C. R. Co.* 20 Minn. 125. It will be seen, however, by an examination of this last case, that the only question presented to the court for its decision was whether the defendant company was liable for the gross negligence of its servants. The case of *Rose v. Des M. Valley R. Co.* 39 Iowa,

246, cited to sustain the rule, was decided upon the con-struction of the statutes of the state of Iowa, and not upon general principles; and the case of *Ill. Cent. R. Co. v. Read,* 37 Ill. 484, does not sustain the rule to the extent stated above.

This court has not adopted the rule laid down by the courts of England, New York, Connecticut, New Jersey, and West Virginia; nor has it adopted the broad rule of the courts of Pennsylvania, Alabama, Indiana, and Minne-sota, that all contracts exempting the carrier from liability on account of the negligence of itself or of its employees and agents are void as against public policy. In the case of *Betts v. Farmers' L. & T. Co.* 21 Wis. 80, the rule of the New York and English cases was adopted, so far as it con-cerned the carriage of live-stock, on the ground that it was questionable whether, in the absence of a statute compel-ling the carrier to do so, he could be compelled to receive and transport that kind of property; but the court expressly say: "We intimate no opinion as to whether it is or is not competent for a common carrier to make similar stipulations with regard to other kinds of property, or so as to protect himself against loss or damage for his own negligence, or the negligence or omissions of his agents or servants." This rule, as regards live-stock, has been perhaps modified by this court — at least it does not seem to have been fol-lowed — in *Morrison v. P. & C. Const. Co.* 44 Wis. 405; and its authority is questioned in *Richardson v. C. & N. W. R. Co.* 61 Wis. 596.

The rule laid down in *Railroad Co. v. Lockwood* has been, to some extent, approved by this court in the cases of *Mor-rison v. P. & C. Const. Co.* 44 Wis. 405; *Black v. Goodrich Transp. Co.* 55 Wis. 319; *Richardson v. C. & N. W. R. Co.* 61 Wis. 596; *Lawson v. C., St. P., M. & O. R. Co.* 64 Wis. 447, 455. In the case of *Morrison v. P. & C. Const. Co. supra,* it seems to have been held that the carrier was liable to the

shipper for any ordinary neglect or want of care on its part, or on the part of its agents and servants, notwithstanding the horses (the freight in question) were shipped upon a bill of lading which stated that they were to be at the risk of the owner.

There is another class of cases which hold that, in the case of a passenger who is carried gratuitously by a common carrier, the carrier may, by express contract, relieve himself for the mere neglect or want of ordinary care on the part of the carrier or of his servants and employees; but that he cannot relieve himself from liability for gross negligence on his part or on the part of his servants and employees. Although this court has not expressly adopted this rule in a case of the kind at bar, yet it has been stated in several of the opinions in the cases above cited (see *Black v. Goodrich Transp. Co., Lawson v. C., St. P., M. & O. R. Co.,* and *Richardson v. C. & N. W. R. Co., supra)* that the carrier cannot by contract relief itself from liability for such gross negligence, either of itself or its agents and servants.

In *Ill. Cent. R. Co. v. Read,* 37 Ill. 484, which was a case for an injury received by a passenger riding upon a free pass, and upon a contract in all respects like the one in the case at bar, after a very elaborate argument of the case by counsel, and a carefully considered opinion by the court, it was held " that the agreement did not exempt the railroad company from the gross negligence of its employees, and that it does exempt it from all other species or degrees of negligence not denominated gross, or which have the character of recklessness. For such unavoidable accidents as will happen by the best managed railroad trains this agreement would be a perfect immunity to the company."

In the case of *Ill. Cent. R. Co. v. Morrison,* 19 Ill. 136, it was said " that railroads have the right to restrict their

liability as common carriers by such contracts as may be agreed upon specially, was a good rule, the railroad companies still remaining liable for gross negligence or willful misfeasance, against which good morals and public policy forbid they should be permitted to stipulate." So far as the Illinois court has applied this rule of exemption to cases other than those arising upon a case of gratuitous carriage of a passenger or freight, we do not approve the decision, but are inclined to follow the rule laid down in *Railroad Co. v. Lockwood*, and the numerous other cases following the rule in that case.

The same rule, but perhaps still more restricted, is adopted by the supreme court of Georgia in *W. & A. R. Co. v. Bishop*, 50 Ga. 465, 473. This case was a case of an employee of the company who had entered into an agreement to take upon himself all the risks of his position, and that he would in no case hold the company liable for any damage he might sustain by accidents or collisions on the trains or road, or which might result from the negligence or carelessness or misconduct of other employees or persons connected with such road, or in the service of the company. The court say: " We recognize one limitation to this agreement, and that is the limitation the law puts upon all contracts. No man can stipulate for immunity in case he should do an act that is a crime. No contract is a good one that is in violation of law, that which the law forbids, or which is against good morals, or contrary to public policy. Nothing in this contract can therefore protect the company when the negligence which has caused the damage is a crime,— when it comes within that kind of negligence which is called, in sec. 4291 of the Code, criminal negligence, reckless of human safety and human life. That sort of negligence is forbidden by law, and punishable by law as penal. It is contrary to good morals and to public policy as declared

by law." See, also, on this point, *Comm. v. V. & M. R. Co.* 108 Mass. 7; *M. & O. R. Co. v. Hopkins*, 41 Ala. 486; *Ind. Cent. R. Co. v. Mundy*, 21 Ind. 48.

We can see no good reason why the person who seeks a gratuitous carriage from a railroad company should stand in the same position to the carrier as the person who pays for his transportation and therefore forces the carrier to assume all the duties of such carrier. The carrier is in no case under obligation of law to carry a person gratuitously, as he is when he is tendered his proper compensation, and he does not, therefore, owe the same duty to the person carried gratuitously that he does to the person who pays for his carriage, unless he chooses to accept such duty by not stipulating against assuming it. Nor does it appear to us to be contrary to public policy or to good morals for the carrier to stipulate with the person who desires a gratuitous transportation that he shall assume the ordinary risks of accident which may occur through the want of ordinary care on the part of the servants of the company. So long as the carrier does not attempt to excuse himself from that recklessness of his servants which is dangerous to human life, or is punishable by law, or inconsistent with good morals, it does not seem to us that he is violating any rule of law, or that he is acting against public policy. The argument of the English courts, and the courts of New York, New Jersey, and Connecticut, when limited as above stated, seems to us unanswerable. We are also of the opinion that the carrier cannot stipulate against any negligence of his servants or agents which is expressly made a crime, and punishable by law, even though such negligence may not be of that degree which is denominated gross carelessness or recklessness. See secs. 4357, 4358, 4363, 4367, 4392, and 4393, R. S.

We think that a railroad company, when carrying a passenger gratuitously, is in a condition analogous to the

bailee for the sole benefit of the bailor,— as is generally instanced, the case of a person storing goods for another on his premises without compensation; and in such case it always has been held that the bailor shall only be liable for their loss or damage when he is guilty of gross neglect. The carrier who carriers a passenger gratuitously, does it, presumably, solely for the benefit of the person carried, and it is but reasonable that he should be allowed to stipulate that he shall be liable only for the gross neglect of his employees and servants, but that public policy prohibits him from stipulating to exempt himself from liability for the gross neglect of such servants and employees. According to the definition of the elementary writer, "gross neglect is the want of slight diligence, or it is. the want of that care which every man of common sense, howsoever inattentive, takes of his own property." Lawson on Carr. § 126; Story on Bailm. § 17.

As we hold the contract made by the railroad company with the deceased was effective to relieve the company from liability for any damage to him by reason of a want of ordinary care on the part of its servants and employees unless it was caused by some criminal act of such servants or employees, it becomes necessary for the plaintiff to show by the evidence that the death of the deceased was caused by reason of the gross carelessness of such agents and servants. It is clear, therefore, that the circuit judge erred in entering judgment on the special verdict as amended by him, and should, in his view of the evidence, upon the question of gross neglect of the employees and servants of the defendant, have ordered a new trial.

We are of the opinion that the practice of the circuit court in this case ought not to prevail, and that, in all cases where the circuit court undertakes to set aside a special finding in a special verdict, a new trial should be ordered, unless it clearly appears that the finding is wholly imma-

terial and can have no effect as to the judgment which should be entered in the action.

We are all of the opinion that, upon the whole evidence in the case, the question of the gross negligence of the employees of the defendant in this case was clearly a question for the jury, and that the circuit judge erred in setting it aside as unsupported by the evidence. The mistake of the learned judge was in holding that there was no sufficient evidence of the gross misconduct of the employees of the company, and in holding that the gross negligence found by the jury was based solely on the fact that the jury found that the men on the engine could have seen the stalled train in time to have stopped before running into it. Whether they could or could not see was not conclusive as to the question of their gross negligence. The very fact, if it was a fact, that they could not see, might tend to show gross carelessness in not stopping the train before running into it. If they could not see it, and they had no definite knowledge as to the exact location of it, it was evidence tending to show gross negligence not to stop the train before striking, or, at all events, in not slackening speed so as not to endanger the lives of those on the stalled train before running into it. That there was sufficient evidence to go to the jury on the question of gross negligence it seems to us is very clear. See *Comm. v. V. & M. R. Co.* 108 Mass. 7, 12; *Lawson v. C., St. P., M. & O. R. Co.* 64 Wis. 447, 458; *Moseley v. Nacoochee*, 28 Fed. Rep. 462, 467.

The case in 108 Mass. was an action to recover under the provisions of sec. 97 of ch. 63 of the General Laws of that state, which provides as follows: "If, by reason of the negligence or carelessness of a corporation, or of the unfitness *or gross negligence of its servants or agents,* the life of any person, being a passenger, is lost, the corporation shall be punished by a fine not exceeding $5,000, nor less than $500, to be recovered by indictment," etc. The only evidence in

that case was that the death was caused by the collision of the train on which the deceased was a passenger with a hand car which the track-master suffered to be on the track through a mistake in time occasioned by his failure to observe correctly the hour indicated by his watch. The track-master testified as follows: " Thinks he examined his watch before he started, and is certain he looked at it while on his return, and read the time as five minutes to ten." In reality it was " ten minutes to eleven," and the watch indicated that time, and it was within the running time of the morning train between Royalston and Athol. The accident was wholly occasioned by the foregoing conduct of the track-master, and no other negligence is charged in the case. In this case it was said by the supreme court that the question of the gross negligence of the track-master was properly submitted to the jury. There was certainly much more evidence in the case at bar to establish the gross negligence of those in charge of the engine and snow-plow than there was in the case cited. The court should have directed a judgment in favor of the plaintiff upon the special verdict.

It is alleged as error that the plaintiff was allowed to show on the trial that she had no means of support except what her husband had furnished her. We think that fact was a proper matter of proof, It tended directly to show that she had suffered a pecuniary loss by the death of her husband.

The second error assigned is the admission of the evidence of the witness Loper as to what one of the train-men said to him at the time of the accident about the speed at which the engine and snow-plow were running. This evidence should perhaps have been excluded; but its admission has not prejudiced the defendant, as the verdict of the jury as to the speed of the train is very clearly not based upon it. The witness testified that the train-man told him they were running at the rate of twenty-five or thirty miles an hour.

Annas, Adm'x, etc. vs. The Milwaukee & Northern R. Co.

The jury found they were running at the rate of ten miles an hour. It is evident, therefore, that their verdict is not founded on this evidence.

Third, it is urged that the verdict is so indefinite that no judgment can properly be rendered upon it. We are not able to find anything uncertain or indefinite in the verdict, and it is quite sufficient to sustain a judgment against the defendant.

The objection that the rate of speed found by the jury is wholly unsupported by the evidence is clearly not well taken.

Fifth, it is urged that the $2,500 damages, for which judgment was taken, is excessive. The deceased was fifty-five years old. Though not a robust man, he was in fair health,— a workman who could earn $2.25, working ten hours per day, and at that rate for less time. His family were, to a large extent, dependent upon his labor for their support. We cannot say, as a matter of law, that his life was not worth the sum of $2,500 to his widow. As compared with other verdicts which have been sustained by this court, it is clearly not excessive. *Johnson v. C. & N. W. R. Co.* 64 Wis. 425; *Schrier v. M., L. S. & W. R. Co.* 65 Wis. 457; *Lawson v. C., St. P., M. & O. R. Co.* 64 Wis. 447.

We find nothing in the instructions to the jury which are objectionable, except the following sentences: "Gross negligence is often defined to be the want of extraordinary care; ordinary negligence being the want of such care as men of prudence exercise in their own affairs. There are men that are extraordinarily careful and prudent much beyond the average. Gross negligence is the want of such extraordinary care as men of that class usually exercise." To this last sentence the defendant duly excepted. It is quite apparent that the learned judge clearly misstated the law, and gave a definition of gross negligence which is contrary to all au-

thority.   How this misstatement of the rule occurred we
cannot say, but we are satisfied that it was a pure mistake
on the part of the learned judge, and not a statement made
in ignorance of the law on the subject.   This is evident
from the fact that the learned judge follows this statement
immediately by another statement of what constitutes gross
negligence which is in accord with its true definition, as
follows: ." This degree of negligence, that is, gross negli-
gence, usually involves the element of wanton recklessness
and disregard of life or property, and such a course of con-
duct as constitutes criminal negligence, and which makes
the guilty party criminally liable when life is lost.   In this
case, in reference to this particular question, in order to jus-
tify you in finding that there was negligence here, and it
was of such a character as is denominated gross, you must
find the existence of such wanton recklessness and disregard
of life and property as I have defined."   Taking the charge
as a whole, it was fully as favorable to the defendant upon
this question as the law will permit, and it seems to us that
the jury could not have been misled by the mistake of the
learned judge in his first attempt to define gross negligence.
We would not feel justified in reversing the judgment for
such mere mistake in stating the law, when the mistake was
immediately and fully corrected by the rest of the charge.

   *By the Court.*— The judgment of the circuit court is
affirmed.

See note to this case in 30 N. W. Rep. 282.— REP