LAWSON, Administratrix, etc., Respondent, vs. THE CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant.

*September 3 — December 1, 1885.*

RAILROADS: NEGLIGENCE: EVIDENCE: AGENCY: DAMAGES. *(1, 2) Riding in dangerous place when not contributory negligence: Instructions to jury.   (3) Opinions as to danger.   (4) Authority of conductor.   (5) Contract by agent: Special instructions.   (6) Special contract exempting from liability: Gross negligence.   (7) Evidence of degree of negligence.   (8) Damages recoverable by widow for death of husband.*

1. Plaintiff's intestate, who, in pursuance of a contract for the carriage of horses, and in accordance with the custom in such cases, was riding in the same car with the horses in order to care for them, was killed in a collision caused by defendant's gross negligence. *Held,* that he would not, as an ordinary passenger who had voluntarily placed himself in a dangerous position, be deemed to have been guilty of contributory negligence.
2. The jury should not be instructed that a person who voluntarily places himself in a dangerous position and thereby contributes to an injury cannot recover for such injury, unless such instruction is qualified so as to embrace the element of common prudence.

3. The opinions of witnesses as to whether a stock car was a dangerous place for a person to ride, are not admissible.

4. Where it is customary for some person to ride in the same car with horses, to care for them, it would seem to be within the general authority of the conductor of the train to grant permission to a person so to ride for that purpose.

5. If an agent has authority to make a contract, but, in doing so, violates his special instructions as to the mere form of the contract, the other party having no notice of such instructions, the principal is bound.

6. A carrier cannot by stipulations in a special contract wholly exempt itself from liability for an injury resulting from its gross negligence.

7. Although the negligence of the defendant is admitted in the answer, it is not error to admit evidence of the circumstances of the injury complained of, in order to show that the negligence was *gross*.

8. The damages recoverable by a widow suing as administratrix for the death of her husband, will include the value of her support and protection by her husband during the time he would probably have lived and supported her but for his death by the act or neglect of the defendant; and the jury may also consider the addition that the earnings of the deceased would probably have made to his wealth and property had he continued to live, and the reasonable expectation which the plaintiff had of pecuniary advantage by ultimately receiving a share of such earnings as one of his heirs, and damages may be given with respect to that expectation being disappointed, and to the probable pecuniary loss resulting therefrom.

APPEAL from the Circuit Court for *St. Croix* County.

Action to recover damages on account of the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant's servants. The substance of the answer, and the principal facts shown by the evidence and found by the jury in their special verdict, are stated in the opinion.

Two men, J. D. Rulien and E. C. Marvin, besides the deceased, rode in a car with the horses. Mr. Fay, who shipped the horses, and Mr. Marvin, were each allowed to testify, against objection, that the latter had a conversation with the defendant's station agent at New Richmond, in the pres-

ence of Mr. Fay, in which the agent told Marvin that one man could go free with the stock, and that they would better arrange with the conductor as to the other two.

One H. L. Reed, a witness for the defendant, who assisted in rescuing Rulien from the wreck of the car after the collision, was allowed to testify, against objection, that he asked Rulien at that time what the three men were doing in the car, and that Rulien replied "They didn't know we were in there." Afterwards, on plaintiff's motion, this testimony was stricken out.

Upon the question of contributory negligence the defendant requested the court to charge the jury as follows: " If you find that the plaintiff's intestate voluntarily went into a place of known danger, or one apparently dangerous to any person of ordinary intelligence, and remained there, and by reason of being in such dangerous place received his injuries, then he will be guilty of contributory negligence, and the fact — if you should find it to be a fact — that the conductor knew he was there, would not relieve him from contributory negligence."

The court refused the request, but upon the same question charged the jury as follows: " If the place in the car with the stock was so manifestly dangerous as to become apparent to any person of ordinary intelligence that no person of ordinary care and prudence would go and remain there under the circumstances in which deceased was placed, and his going in contributed to the injury, then the consent of the conductor would not justify the deceased in going in. But in passing upon this question of contributory negligence you will consider the circumstances of the case, and the reason deceased had in entering the car in question, and the testimony tending to show the custom of shippers."

Upon the question of damages the court instructed the jury as follows: "The rule of damages, as laid down by our supreme court, is this: If you find for the plaintiff, in

assessing her damages you must consider the value of the support and protection of the plaintiff by her husband during the time which he would probably have lived and supported and provided for her but for his death from the acts of the defendant. In case you find for the plaintiff, in assessing her damages you are not limited to the simple value of the support and protection of herself, but you may also consider the increase that the earnings of her husband would have made to his wealth and property had he continued to live, and the reasonable expectation which the plaintiff had of pecuniary advantage by ultimately receiving a share of such earnings as one of his heirs, and damages may be given in respect to that expectation being disappointed and the probable pecuniary loss resulting therefrom. That is the general rule. In determining this you will consider the age of these parties, the state of health of the deceased, Mr. Lawson, the kind of a man he was, his ability to work, his ability to save and accumulate property, and the value of the support he was able to and did give her, and that he would be presumed to give her through life. (That would be presumed to have been continued to her hereafter but for his death.) And you will form a judgment as to what damage she has suffered upon that basis. Of course she has lost his support, lost her means of support, or that means of support; has lost any hope that she might have by reason of any accumulations of property on his part. And you will also take into consideration the reasonable expectation that she may have of a long life; you will consider her health as tending to show that; and from all these facts and circumstances you will determine what pecuniary loss she has suffered."

The jury assessed the plaintiff's damages at $3,800. From the judgment entered upon the verdict in favor of the plaintiff the defendant appealed.

For the appellant there were briefs by *S. L. Perrin*, at-

torney, and *John D. Howe* and *Clapp & Macartney*, of counsel, and oral argument by *Mr. Clapp* and *Mr. Perrin.* They contended, *inter alia,* that even if the relation of carrier and passenger should be held to have existed between the defendant and the plaintiff's intestate, yet the latter was guilty of contributory negligence in voluntarily placing himself in a dangerous position. *Hickey v. B. & L. R. Co.* 14 Allen, 429; *Player v. B., C. R. & N. R. Co.* 12 Am. & Eng. R. Cas. 112, 114; *Downey v. Hendrie,* 46 Mich. 498; *Robertson v. N. Y. & E. R. Co.* 22 Barb. 91; *H. & T. C. R. Co. v. Clemmons,* 55 Tex. 88; *Railroad Co. v. Jones,* 95 U. S. 439; *Little Rock & Ft. S. R. Co. v. Miles,* 13 Am. & Eng. R. Cas. 10; *Camden & A. R. Co. v. Hoosey,* 6 id. 454; *Penn. R. Co. v. Langdon,* 1 id. 87; *Doggett v. Ill. Cent. R. Co.* 34 Iowa, 284; *Dietrich v. B. & H. S. R. Co.* 58 Md. 347; *Peoria & R. I. R. Co. v. Lane,* 83 Ill. 448–451. The conductor of the train had no power to bind the company by consenting that the intestate should ride in the car with the horses. *Eaton v. D., L. & W. R. Co.* 57 N. Y. 382; *Hoar v. M. C. R. Co.* 70 Me. 65; *Elkins v. B. & M. R. Co.* 23 N. H. 275; *Murch v. Concord R. Co.* 29 id. 9, 41, 42; *Jenkins v. C., M. & St. P. R. Co.* 41 Wis. 112, 121; *Graham v. T. G. & B. R. Co.* 23 Up. Can. C. P. 541; *Sherman v. T. G. & B. R. Co.* 34 Up. Can. Q. B. 451; *Union Pac. R. Co. v. Nichols,* 8 Kan. 505; *Lucas v. M. & St. P. R. Co.* 33 Wis. 65, 66. And, in any case, the giving of such consent could not relieve the deceased from the duty of exercising ordinary care.

For the respondent there was a brief by *R. H. Start* and *L. P. Wetherby,* and oral argument by *Mr. Start.*

The following opinion was filed September 22, 1885:

ORTON, J. One W. E. Fay, in the night-time of the 12th of December, 1883, shipped on one of the freight cars of the appellant company, at New Richmond, twelve horses to be carried to Phipps Station, a distance of about 100 miles,

and employed the deceased to ride in said car to care for said horses on the route. About twenty-five miles from New Richmond, at a station called Clayton, the train in which said car was placed met and collided with another train standing there at the time, and thereby the car in which the horses and the deceased were being carried was crushed in and broken, and the deceased so injured as to cause his death.

It is admitted in the answer that the collision which caused such death resulted from the fault of the servants of the company, and the jury found that the collision which caused it was occasioned by their gross negligence. It is alleged in the complaint that the said Fay entered into a contract with the company that said horses should be so transported for the usual charges, which were paid, and that it was agreed that John J. Lawson, the deceased, the employee of said Fay, should accompany said horses, and ride with them on said car, to look after their interests. It is substantially alleged in the answer that the company was accustomed to make with shippers of live-stock, at that time, written contracts by which the shipper assumed certain risks, and which contained other provisions favorable to the company, one of which was that the persons who were allowed to ride in the car with the stock should so ride at their own risk of personal injury from any cause whatever, and that no passes should be given to such persons, but that they should sign their names on the back of the contract; and no such contract was made in this instance with the said Fay, but that said Fay applied to the station agent at New Richmond for a car in which to ship horses, which car was provided for his use.

It is further alleged in the answer that, after the accident occurred and said Lawson was seriously injured therein, the said Fay and the station agent at New Richmond made out and executed one of said written contracts, and signed the

AUGUST TERM, 1885. 453

Lawson, Adm'x, etc. vs. Chicago, St. P., M. & O. R. Co.

name of said Lawson on the back, without authority from the company, and that said Fay was not the owner of all of said stock, and that two other persons rode in said car with the deceased, and that they three conspired to obtain in this way a free passage. There was evidence that said Fay and the agent at New Richmond made the said verbal contract of shipment, which provided that one person should ride in the same car with the horses, to take care of them, and that said Lawson, the deceased, went into said car for such purpose, with the knowledge and consent of the conductor of said train, before the car was placed next to the tender in said train, and that Fay had no knowledge of any such customary written contracts in such cases.

There was no evidence whatever of any conspiracy between said Lawson and the two other persons in said car with him to obtain a clandestine and free ride on said train. Whether said Fay was the owner of all of the twelve horses shipped was quite immaterial to the deceased, rightfully within said car, and was very properly omitted from the special findings and verdict of the jury. There was evidence tending to show that it was customary for the defendant company to carry at least one person free in a carload of horses of such number, to take care of them, and that such person was useful in keeping horses so shipped quiet and from injury when the cars were in motion. This statement of the case is sufficient to make intelligible the positions assumed by the learned counsel of the appellant.

*First.* That there was no contract between Fay and the station agent that the deceased should accompany the horses in the car, so as to create the relation of carrier and passenger between him and the company. The learned counsel, in assuming that Lawson was a common passenger, or a passenger in the ordinary sense, if he had any right to ride on that train anywhere, and in citing authorities applicable to such a view of his relation to the company, scarcely

meets the real question here presented. Lawson was, in a sense, a passenger; but he was more than a passenger. He held responsible relations to the stock in his care, and connected with it by the alleged contract of shipment. His place on that train was in the car with the horses, and to care for them, or it was nowhere; and he had no right to be carried on that train in any other place. He was to be carried free and without charge, because he was to be carried in that way. He had no right to be carried in the caboose, or in any other car or place on that train, according to the agreement and understanding of the agent, Gault, and Fay. It was quite immaterial that the deceased was not at the time named as the person to ride in the car with the horses. By the agreement, Fay was authorized to place one person in the car with the horses to take care of them, and the agent did not see fit to have such person named, as he might have done, and Fay carried out the agreement by placing the deceased in the car for such purpose, with the knowledge and assent of the conductor of the train. It is too plain for argument that the deceased was rightfully in the car under the agreement, and was no intruder or trespasser, and the company owed him the duty to carry him there safely by the exercise of reasonable care. The custom of the company in other cases of carrying horses, and with them in the same car some person to take care of them on the route, repels the idea that this case was extraordinary or exceptional. The authorities cited by the learned counsel of the appellant related to common passengers who voluntarily placed themselves where they had no right to be under the contract for their carriage. This is a different case. The deceased occupied the very place where he should have been, and was connected with the live-stock carried so intimately that they could not properly be separated without possible danger to it from the want of his personal care and attention. These are special circumstances attending such

a case not present in cases of common passenger carriage. In the case cited by counsel for appellant of *Eaton v. D., L. & W. R. Co.* 57 N. Y. 382, it was held that the conductor of a coal train who invited a person to ride thereon free did not bind the company, or create the relation of carrier and passenger between such person and the company. In the opinion in that case, however, cases are cited approvingly of persons riding on gravel trains "under certain circumstances," who might recover for injuries occasioned by collision.

*Second.* Had the station agent authority to agree with Fay verbally to carry his horses on a freight car, and one person with them to take care of them? It is insisted by appellant's counsel that the station agent had no authority to make such verbal agreement, and had authority only to make such customary written stock contract as set out in the answer. There is very little, if any, substantial difference between the agreement made and the one which it is admitted the agent had authority to make. Both provide for the carrying of one person, with such number of horses on the same car, without charge. The signing of such person's name on the back of the written contract could have no effect except to bind such person to the stipulation that he was to take the "risk of personal injury from any and every cause whatever." Such a stipulation would not have exonerated the company from liability in case of gross negligence. *Black v. Goodrich Transp. Co.* 55 Wis. 322, and cases there cited. The difference between the contract made and the one that the counsel of the appellant now contends ought to have been made is merely formal, and the authority of the agent to make substantially the contract that he did make is virtually conceded. That class of cases relied upon by the appellant's counsel to show that the agent of a carrier company cannot bind the company by contract in violation of his instructions, or outside of the legitimate

scope of the particular business with which he is intrusted, is inapplicable to this case. The law is well settled that if the agent had authority to make such a contract, and in making it he violates his special instructions as to the mere form of it, of which the shipper has no notice, the company is bound. If the agent has the general authority to make certain contracts, but is restricted by private instructions not known to the other contracting party as to the manner of making them, the principal is bound. This rule is based on the public policy of preventing frauds upon innocent persons, and the encouragement of confidence in dealings with agents. Story on Agency, §§ 73, 126, 133.

Much stress in the argument is laid upon the want of authority in the conductor to permit or allow the deceased to ride in the car with the horses. This question is not of much importance when it is clear that, if the testimony of Fay and Marvin is to be believed,— and the jury had the right to believe it,— the deceased was rightfully in that car by contract and understanding with the agent, and, by other testimony, such a contract was sanctioned by previous custom. There was evidence that the deceased was allowed and permitted by the conductor to so ride, or, at least, that he knew of it and assented to it. It having been customary for a person to so ride in company with horses carried upon said road, the conductor's authority to grant such permission would seem to fall within his general authority in the management and control of the train. *Bass v. C. & N. W. R. Co.* 36 Wis. 463; *Craker v. C. & N. W. R. Co.* 36 Wis. 670; *C., M. & St. P. R. Co. v. Ross,* 112 U. S. 377.

We conclude, therefore, that the deceased was rightfully a passenger upon said train under peculiar circumstances, sanctioned both by the contract and custom of the company. What has already been said supports the ruling of the circuit court in rejecting the evidence offered to prove

Lawson, Adm'x, etc. vs. Chicago, St. P., M. & O. R. Co.

what were the private instructions of the company to its agents as to the form in which such contracts should be made, without showing or offering to show that Fay had knowledge of them.

*Third.* Did the deceased by his negligence contribute to the injury which caused his death? This was a proper question for the jury to decide, and their verdict should not be disturbed unless the facts were such as to warrant this court in holding, as a matter of law, that the deceased was guilty of a want of ordinary care, and that such negligence *per se* contributed to his injury and death. Wharton on Negligence, § 420 *et seq.; North Penn. R. Co. v. Kirk,* 90 Pa. St. 15; *Karasich v. Hasbrouck,* 28 Wis. 569. Was it so unusual and so clearly dangerous for the deceased to have been carried in that car with the horses, and was his riding therein so much the cause of his injury, that it can be said without hesitation that he was guilty of a want of ordinary care which contributed to his injury? Can it be said that an ordinarily prudent man would not have done so? We think not. When the deceased entered the car he had a right to suppose it would be placed in a safe and proper position in the train. But the company's servants placed it next to the tender, and by reason thereof it was the only car in the train that was demolished by the collision. It was customary for other men to so ride in the car with horses, and the injury to such, occasioned thereby, is not so frequent as to make such a place necessarily or probably dangerous. The testimony was that it was proper and useful for some one to so ride with horses to take care of them and quiet them and keep them from injury. Such service would seem to be a reasonable, as well as common, if not a necessary, employment. The deceased could not have been carried in the caboose, or anywhere else on that train, consistently with his employment. He was in the car with the horses in the discharge of his duty, and, as we have seen, he

was rightfully there. The jury properly found that he was not guilty of a want of ordinary care in riding in the car in which he received his injuries, which contributed directly to the injury, and that he was not asleep at the time of the accident. They also found that he entered that car for the purpose of caring for the stock during the journey, and that it was usual on that road for men in charge of stock of this kind, and loaded as this was, to ride in the car with such stock. These findings we cannot disturb.

There was no evidence whatever that the deceased entered the car with the horses clandestinely or to steal a ride or to defraud the company, and therefore the authorities applicable to such a case have no force.

The respondent was allowed to show the circumstances of the collision, against the objection of the appellant, in order to show that the servants of the company were guilty of *gross* negligence. According to the brief of the learned counsel of the appellant, " it made no difference in the case, so long as defendant was negligent. If plaintiff showed herself otherwise entitled to recover, she could only be defeated by showing negligence on her husband's part." This being so, proof of gross negligence was immaterial and could do no harm. But we think proof of the accident and its circumstances was proper, and that it justified the finding of gross negligence. The negligence of the company was charged in the complaint and admitted in the answer, but its degree was an open question for the jury.

This disposes of the main questions raised in the brief of appellant's counsel. Then, as special exceptions, which will be briefly noticed: (1) The instruction refused in respect to the deceased having voluntarily placed himself in a dangerous position on the train and thereby contributed to the injury, was refused and qualified so as to embrace the element of common prudence. This was correct, for all

Lawson, Adm'x, etc. vs. Chicago, St. P., M. & O. R. Co.

places about a railroad train are more or less dangerous in case of a collision. (2) What conversation occurred between Marvin and the agent in the presence of Fay in relation to persons riding on the car with the horses, including the deceased, and before he had gone into the car, was a proper question to show the contract, and was a part of the *res gestæ* as far as it related to the right of the deceased to so ride, and as to the others it was immaterial. (3) The rule of prospective damages to the respondent by the loss of her husband, and the evidence to prove it, seem to be fully sanctioned by *Potter v. C. & N. W. R. Co.* 21 Wis. 372, *Castello v. Landwehr*, 28 Wis. 522, and according to the rule elsewhere. *Donaldson v. M. & M. R. Co.* 18 Iowa, 280; *Rowley v. L. & N. W. R. Co.* L. R. 8 Exch. 222; .Rorer on Railroads, 1167. (4) The testimony of the witness Reed was properly stricken out, because the deceased was not bound by the statements of others in the car with him after the accident, a conspiracy between them not having been shown. (5) The court properly refused to allow witnesses to give their opinions that the car in which the deceased rode was a dangerous place. This was a question solely for the jury to decide on all the facts. There were some other exceptions, but not important or pressed on the argument.

This case was very ably and fully tried. The rulings of the court and the charge to the jury were considerate and judicious. The findings of the jury are all supported by competent evidence.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied December 1, 1885.

See note to this case in 24 N. W. Rep. 622.— REP.