## HEUMPHREUS v. FREMONT, E. & M. V. R. CO.

1. In the absence of knowledge brought home to the defendant, or of anything tending to show that contracts under which certain witnesses had, in isolated cases, shipped live stock over portions of defendant's railway, provided that "it is agreed and understood that such owner and shipper shall feed, water, and take care of such stock at his own expense and risk," and "persons in charge of live stock, who are passed on trains with it, are so passed to take care of the stock, and must ride in the caboose attached to the train," the mere fact that they had ridden in the car with their stock is no evidence of a waiver of such stipulation, when freely entered into and acted upon by the shipper.

2. Where, in the absence of gross negligence on the part of the company, a shipper of immigrant movables, including a span of horses, rides in the car with his property, over the objection of the conductor in charge of the train, and in violation of a contract of shipment, in which he expressly agreed to ride in the caboose attached to the train, and by reason of such fact alone sustains a fatal injury, he is guilty of contributory negligence sufficient to defeat a recovery for such injury.

(Syllabus by the Court. Opinion filed, Dec. 28, 1895.)

Appeal from circuit court, Pennington county. Hon. WILLIAM GARDNER, Judge.

Action by plaintiff to recover damages for the death of her husband. From a judgment for plaintiff, defendant appeals. Reversed.

The facts are stated in the opinion.

*John B. Hawley* and *James W. Fowler*, for appellant.

Usage can never change the written stipulations of parties, though it may aid in the explanation of their terms.   Ledyard v. Hibbard, 12 N. W. 637; Eager v. Ins. Co., 14 Pick. 141; Pavey v. Burch, 3 Mo. 447; Farrar v. Stackpole, 6 Me. 154; Randall v. Smith, 63 Me. 105; Boorman v. Jenkens, 12 Wend. 566; Davison v. Kittle, 4 Hill. 107; Irwin v. Clark, 13 Mich. 10; New York v. Citizens, 44 Mich. 585.   If usage is relied upon it must be shown to be ancient, certain, uniform, definite, reasonable, and so general as to furnish presumption of knowledge by both parties.   Wilson v. Bauman, 80 Ill. 495; Bissell v. Ryan, 23 *Id.* 570; Turner v. Dawson, 50 *Id.* 85; Corbett v. Underwood, 83 *Id.* 327; Kendall v. Russell, 5 Dana. 501; Parrott v. Thacher, 6 Pick. 426; Thwing v. Ins. Co., 111 Mass. 109. One who by his negligence has brought an injury upon himself cannot recover damages for it.   Railroad v. Jones, 95 U. S. 439; *Id.* v. Lane, 83 Ill. 448; Railroad v. Clemmons, 8 Am. & Eng. Railroad Cases 396; McCorkle v. Railroad, 61 Ia. 555; Blake v. Burlington, 78 Ia. 57; Jenkins v. Railroad, 41 Wis. 112; Schoenfeld v. Railroad, 74 *Id.* 433; Railroad v. Lindley, 41 Am. & Eng. Railroad Cases, 72; Railroad v. Sue, 25 Neb. 772; Abend v. Railroad, 111 Ill. 202; Doggett v. Railroad, 34 Ia. 284; Eaton v. Railroad, 57 N. Y. 482; Player v. Railroad, 62 Ia. 723; Beach Contrib. Neg. 855; Pierce Railroad Law 314; 4 Ency. Law 54; Warden v. Railroad, 53 Am. & Eng. R. Cases, 470.

*Wood & Buell*, for respondent.

A party cannot sit by and permit an incompetent or improper question to be asked without objection, and when he finds the answer prejudicial to him, then move to strike it out. Way v. Johnson, 58 N. W. 552; 5 S. D. 237.   A shipper of stock riding on a freight train is a passenger for hire, though not directly paying his fare.   Ray on Neg. of Imp. Duties, 262; Railroad v. Lockwood, 17 Wallace, 357; Pitcher v. Railroad, 28 N. Y. 647; Lawson v. Railroad, 24 N. W. 618; Florida v. Web-

ster, 5 S. 714.  A railroad's liability for negligence should be strictly enforced, upon grounds of public policy.  Cumberland v. Hughes, 51 Am. Rep. 513; Jacobus v. Railroad, 20 Minn. 110; Brown v. Railroad, 34 N. Y. 404.

FULLER, J.  This was an action to recover damages for the loss of plaintiff's husband, who is alleged to have been killed by the negligence of defendant.  Plaintiff had judgment in the court below, and the defendant appeals.  The shipping contract offered in evidence, and relied upon measurably by respondent, and wholly by appellant, was for the shipment of immigrant movables, including a span of horses, from Rushville, Neb., to Hot Springs, in this state, and contains the following provisions:  "Persons in charge of live stock, who are passed on trains with it, are so passed to take care of the stock, and must ride in the caboose attached to the train.  Persons in charge of live stock are prohibited from getting on or off the cars, or walking over them, while they are moving.  *  *  *  Persons who are thus passed are passed at their own risk of injury from any cause whatever."  This contract was signed by Charles Heumphreus, as owner of the property, and by the agent of defendant at Rushville.  The conductor in charge of the train at the time the car containing the property of Charles Heumphreus was "picked up" at Rushville, after testifying that on leaving that station, and after he had called "All aboard!" Mr. Heumphreus asked him to wait until he could get into his car, continued as follows: "I told him to get into the caboose; that was the place for him to ride; that was a freight train.  He got into the caboose.  I did not see his contract at that time.  I saw it after he got into the caboose and I commenced to take up tickets.  He presented the contract as authority for him to travel on that train.  I punched it with my punch, as it shows.  I ran that train to Chadron, thirty-two miles from Rushville.  I didn't come north of that.  That was the end of my division.  He didn't ride all the way in the ca-

boose car with me. I didn't see him any more after we got to Hay Springs. I don't know where he went." At Chadron the crew was changed, and a train consisting of a caboose and 13 cars, including the one containing the property above mentioned, was "made up," and "pulled out" of that station on schedule time. Nothing appears to have been seen of Mr. Heumphreus from the time of his disappearance at Hay Springs until a derailment of a portion of the train, occasioned by the striking of a bull, took place, about midway between the stations of Smithwick and Buffalo Gap, when, by jumping from the car in which his property was placed, he sustained an injury which, upon the following day resulted in death.

As disclosed by the evidence, the cause and attending circumstances of the wreck were not of a character that would sustain an imputation of gross negligence upon the part of appellant's employes in charge of the train, and that question was not submitted to the jury. The engine and cars of which the train was composed were in good order, equipped with all proper appliances, operated by skilled and experienced railroad men, and the track, including rails and roadbed, was in good condition. Although 25 minutes appears to have been spent in running the train, upon a uniform down grade, 7½ miles from the last station to the place where the accident occurred, there is a conflict in the evidence as to its rate of speed when a portion of the train was thrown from the track and Mr. Heumphreus jumped from his car. One of plaintiff's witnesses testified that the rate was 25 or 30 miles per hour, and a large number of other witnesses testified, on the part of defendant, that they were running, at the time, from 18 to 20 miles per hour. The accident occurred upon a clear day, and at a point upon a public crossing which it is claimed might have, and perhaps should have, been observed by men in charge of the approaching engine, for a distance of nearly one-half mile. Respondent's evidence is to the effect that the animal struck was in the rear of about 30 head of cattle, all of which appeared to

have passed over the track, and at the time were upon or in the immediate vicinity of the company's right of way, although appellant's engineer testified that he saw but two. While it appears that the engineer and trainmen put forth every possible effort to avoid the accident after the animal was discovered to be upon the track, counsel for respondent maintain that they were negligent in not observing earlier so large a number of cattle in dangerous proximity, and in time to stop the train and prevent the calamity which followed. Without discussion of appellant's evidence, or further pursuing the question as to the ordinary negligence of the company's employes, we will assume that the evidence in that regard, uninfluenced by other facts and circumstances, was sufficient to go to the jury, and direct our attention to what appear to be the controlling questions in the case.

With reference to the engine and train, the exact position of the car occupied by the husband of plaintiff does not clearly appear. The engine and the first and second cars attached thereto remained on the track, the next five, including the car of immigrant movables, were derailed, leaving the rear half of the train, including the caboose, upon the track. This caboose contained cushioned seats for 27 passengers, and there were, in all, about 5 occupants. It is safer, by far, to occupy a seat in a caboose at the rear of a train, than to ride in a freight car loaded with farm machinery, horses, household effects, provisions, and poultry. The horses came out of the wreck unharmed but their owner jumped from the car and was killed. Had he remained in the caboose, he would have sustained no injury.

Under the contract the company was liable to the extent of $100 per head, in case of an accident resulting in the death or injury to the horses; that is, the value thereof was in no case to be estimated at a greater amount. A witness who stated that he had never shipped horses in a car loaded with immigrant movables was allowed to testify, over appellant's objection, that four years prior to that time he shipped a stallion

for a short distance upon appellant's line of railway, and rode in the car with the horse. He further testified that he did not know what kind of a contract he had with the company, and it does not appear that any one in its employ gave him permission to ride with the horse, or knew that he was doing so. Seven years before the trial he entered into a contract at Chicago with the Chicago & Northwestern Railway Company for the shipment of horses in less than a car load from that city to Rapid City, S. D., and rode in the car with the horses. With the foregoing experience and means of knowledge as a basis, he was allowed, over a valid objection, to state that it was, at the time to which he had referred, the custom of appellant to allow shippers of live stock in less than car-load lots to ride in the car with such animals, and that it was necessary for some one to do so, in order to help them up, and prevent injury, in case they were knocked down by the cars coming in contact with one another, or in starting or stopping the train. Two or three other witnesses who had shipped live stock at different times over portions of appellant's line, in less than car-load lots, testified that it was customary and necessary for some one to ride in the car, to take care of the property, and that they had done so a portion of the time; but none of them stated that their contract required them to ride in the caboose, or that any employe of the company gave them such permission, or knew that they were thus riding in the car. Obviously, a span of horses properly loaded would not ordinarily, in starting or stopping, be thrown on the floor of a car with such a degree of violence that they would be unable to arise without assistance, unless the operators of the train were guilty of actionable negligence, for which appellant would have been liable under its contract. The mere probability of such an occurrence suggests the danger attending a person who occupies a place in an ordinary freight car loaded with farm machinery, household furniture, and horses. By the law of the land, and the contract under which the property in question was shipped, Mr. Heum-

phreus was relieved from the necessity of endangering his life to prevent such injury to his horses as might be occasioned by the negligence of appellants employes.   Under that contract it was the duty of appellant to safely transport, in consideration of $40, the car load of personal property from Rushville to Hot Springs; and as consideration for his transportation the owner thereof agreed to ride in the caboose, the only place upon the train provided for passengers, and to take care of the horses. By riding in the caboose the owner had an ample opportunity to feed and water his horses, and to look after and take care of them at each station, while his car was standing upon the track. This was all the care that his contract contemplated, required, or permitted.  Generally, where parties have deliberately entered into and acted upon a valid contract, the terms of which are expressed in unambiguous language, usage will not destroy its force and effect, by making a different contract with reference to the subject-matter thereof.   Bank v. Ward, 100 U. S. 206, 207; Barnard v. Kellogg, 10 Wall. 383; Woodruff v. Bank, 25 Wend. 673; Coxe v. Heisley, 19 Pa. St. 243.

It in no manner appears from the evidence offered to establish by usage a waiver of the provision assented to by the shipper in this instance, and by which he was bound to ride in the caboose attached to the train, that any of the shipments about which the witnesses testified were made under a contract containing any such provision.  Neither was the evidence sufficient to establish the existence of a custom at the time when or place where the contract under consideration was made or was to be performed.   It cannot be said, from the evidence, that Mr. Heumphreus or appellant ever knew that men had ridden upon that line of railway in freight cars with their live stock; and the very fact that he was called upon to promise, and did expressly agree, to ride in a caboose, would not only rebut any presumption that they had entered into a contract with reference to and in accordance with a usage of that character, but conclusively shows a determination upon the

part of the company to prevent such an occurrence. The word "usage" is defined by Sec. 4753, Comp. Laws, as follows: "Usage is a reasonable and lawful public custom concerning transactions of the same nature as those which are to be affected thereby, existing at the place where the obligation is to be performed, and either known to the parties, or so well· established, general and uniform, that they must be presumed to have acted with reference thereto." If it were not a general, uniform, and public custom for men to ride on that road with their stock at that time, so well established that the parties "must be presumed to have acted with reference thereto," appellant would not be liable, upon the ground of usage, had the contract contained no provision that "persons in charge of live stock, who are passed on trains with it, are so passed to take care of the stock, and must ride in the caboose attached to the train." As the custom was not shown to be in existence, it could not have been known, and the parties could not have acted with reference to it. Walls v. Bailey, 49 N. Y. 464. Had all prior contracts expressly provided that shippers of live stock in less than car-load lots must ride in the freight car with their property, or, in the absence of a contract designating where such shippers should ride, had appellant admitted that a usage to that effect had existed and remained in full force upon its line from the time of the first shipment to the date of the contract before us, such usage or agreement would not prevent the parties from making a different arrangement, nor destroy the effect of a contract expressly providing that the shipper must ride in a caboose.

In the case of Player v. Railway Co., 62 Iowa, 723, 16 N. W. 347, it does not appear that the contract contained any provision that plaintiff should ride in the caboose, and the brakeman appears to have directed him to get onto the freight car, which was thrown from the track, and caused plaintiff to sustain the injury, to recover for which the suit was instituted. It was conceded that the negligence of defendant was sufficient to

entitle plaintiff to recover, "if he was not guilty of contributory negligence in riding on the freight car, instead of the caboose," and the court said: "Where one having cattle on the train has time to get aboard the caboose, but fails to do so, and boards a freight car, and rides there, by reason of which fact he is injured, he is guilty of such contributory negligence as will defeat his recovery for such injury, notwithstanding the railway employes may have been negligent in not bringing the caboose within a reasonable distance of the depot." In accordance with the express terms of his contract, and in obedience to the direction of the conductor in charge of the train when it left Rushville, and the only person by whom Mr. Heumphreus appears to have been seen before the accident, he took his seat and rode for a time in the caboose. Appellant had not waived the provision of its contract. Its conductor was fully authorized to direct him to ride in the caboose, and nothing whatever appears to have occurred which rendered it necessary for him to ride in the freight car. The fact that the owners of grading outfits, valuable stallions, or different animals, whose contracts might have been entirely different, found it necessary to ride in the car with their stock, in order to protect it from the negligent acts of the company's employes, has no tendency to prove that it was necessary for the shipper in this case to violate his contract, and to place his life in jeopardy, to prevent injury to ordinary horses, occasioned by such negligence, and for which the company was liable. Had there been no stipulation requiring the owner to ride in the caboose, or had a usage constituting a waiver of such provision been first established, and the character of the particular horses included in the shipment been shown to be such that they required constant attention, witnesses who had, under the same kind of a contract, repeatedly shipped such horses, would, perhaps, under the Illinois case relied upon by respondent, be competent to testify as to the necessity of some one being in that particular car to protect the property. In that case the party who sustains a per-

sonal injury was riding in a car with two valuable stallions that were being shipped together.   By suddenly stopping the car thus occupied, the man was thrown down and injured.   The contract of shipment prohibited him from riding in the car with the horses.   Witnesses were permitted to testify at the trial that where two valuable stallions are shipped in a car together, under such a contract, it is not only necessary, but the constant practice of the company, to allow a man to ride in the car with them.   The court said:   ''If it was absolutely necessary, in order to protect plaintiff's property, for plaintiff to ride in the car with the horses, and the company had waived the prohibitory clause in the contract of shipment, and consented that plaintiff ride in the same car with the horses, evidence tending to prove these facts was competent for the jury.''   Railroad Co. v. Dickson, 32 N. E. 380.   There being no evidence that appellant herein had waived the prohibitory clause in the contract before us, or consented that the deceased might ride in the car with his horses, and the reason and necessity therefor not being shown, the case above cited is of little assistance in determining the rights of the parties to this action.   An emergency might arise, or special circumstances exist, by which a person who had been injured by riding in a freight car, with live stock, in violation of an agreement to care for the same and ride in the caboose, would be relieved from contributory negligence, but nothing to bring the case within such an exception to the general rule appears in the record before us.   The conclusion to which we are brought renders unnecessary a consideration of appellant's contention that the rule laid down in the case of Meuer v. Railway Co. (S. D.) 59 N. W. 945, should be applied to this case, although the same was tried in the court below upon a theory that suggests a waiver of the provision of the contract construed in that case; and, furthermore, it will not be essential to a determination of this appeal to consider assignments of error relating to the rulings of the court upon questions of evidence, and to its instructions to the jury.

He could ride in the caboose and take care of his horses, but he could not ride in the caboose and at the same time ride in the freight car.   The former is just what he undertook, by his contract, to do.

When respondent had rested, and again at the conclusion of all the evidence, appellant moved for the direction of a verdict against the plaintiff, and in favor of the defendant, for the reason, among others, that the undisputed evidence shows that the contract between the parties expressly provided that the deceased must ride in the caboose attached to the train, and that he was warned by the conductor against riding in the freight car, and directed to ride in the caboose, and the force and effect of such contract had not been destroyed or affected by the introduction of parol evidence.   We think this motion should have been sustained.   The judgment appealed from is reversed, and a new trial is ordered.

KELLAM, J.   I concur in the foregoing opinion.   The carriage contract contained two provisions, which must be construed together, and so interpreted, if possible, as to make both operative:   "It is agreed and understood that such owner and shipper shall feed, water, and take care of such stock at his own expense and risk;" and "Persons in charge of live stock, who are passed on trains with it, are so passed to take care of the stock, and must ride in the caboose attached to the train." What we want to reach is the intention of the parties, for, in the construction of contracts, all rules are subservient to this end.   Where did the parties to this agreement contemplate that Heumphreus should ride and spend his time in the transit,—in the box car, with his horses, or in the caboose or passenger car?   I think the contract itself answers these questions, and directly disproves that the care of the stock contemplated was such as to require the shipper to remain with it.   If such care was contemplated it was utterly absurd to add, "and must ride in the caboose," for both parties would know that he could not

ride in the caboose, and at the same time be with the horses in the box car. Doubtless, the contract was in the form generally in use by that company, and was made for usual and ordinary conditions. There is nothing in this case suggesting that any unusual conditions existed, either as to the character or disposition or value of the horses, or in any other respect that would make this case any other than the shipping of two ordinary horses with other property in a car by themselves. The plaintiff recovered, not upon a showing that extraordinary conditions existed, presumably not within the contemplation of the parties, and so not necessarily covered by its terms, but upon evidence that in ordinary cases it is always necessary for the shipper to ride and remain with his stock, in order to take proper care of it. This seems to be, in form, a general contract for the carrying of live stock. Suppose this car had been filled with horses; could the plaintiff justify his riding and staying in the car with them, under the terms of the contract, by proving by witnesses that it was necessary so to do in order to take proper care of them? Such a holding would do an immediate wrong to the carrier, and an eventual greater wrong to shippers, for it would not only justify, but require, the carrier to greatly increase its charges, in order to get compensation, not only for carrying the stock, but for carrying the shipper in charge under an incomparably increased risk. I have no doubt what this contract meant. For carrying these horses the defendant company had undertaken and been paid for assuming a risk, as to them, limited to $200. As to the shipper, its risk was unlimited. It had a right to, and ordinary prudence would dictate that it should, minimize the risk, as to him, by requiring him to ride in the place of greatest safety. I think that, when Heumphreus made this contract with the company, he agreed that in the absence of intervening causes, which would change ordinary conditions, he would ride, not in the car with his stock, but in the caboose, and that the general judgment of witnesses that it was necessary for shippers of stock to ride in

the car with it was not competent to defeat or change the terms
or effect of the agreement. It seems to me that a contrary
ruling would necessitate the examination of a further question
as to the effect of the concluding words of the stipulation. He
was to "load, feed, water, and take care of such stock at his
own expense and risk." If he was' necessarily there taking
care of the stock, was not he there "at his own risk," except
as to risk from such negligence as the company could not con-
tract against? Upon the questions discussed, I agree with
Judge FULLER.

CORSON, P. J. I am unable to concur in the views ex-
pressed in the majority opinion, and I shall attempt only a
brief statement of my reasons for dissenting:

It may be conceded that if the deceased had been riding at
the time of the accident in the caboose car, he would have
escaped injury, as that car seems not to have been derailed or
sustained any damage, and no passenger riding therein was in-
jured. And it may also be conceded, as such seems to be the
law, that when a person is injured while voluntarily, and with-
out any necessity therefor, riding in a portion of the train
where he has no right to ride, and in which place a person
would be more likely to be injured from an accident to the train,
and he is so injured by such an accident, which injury would
not have been sustained had he been in his proper place on the
train, he cannot recover for such injury. Railroad Co. v. Jones,
95 U. S. 439; Pennsylvania Co. v. Langdon, 92 Pa. St. 21; Law-
son v. Railroad Co., 64 Wis. 447, 24 N. W. 618. In such case
the passenger so riding without right or necessity on such a
dangerous part of the train unnecessarily incurs the hazard,
and therefore assumes the risk, and is deemed to be guilty of
contributory negligence. The principal question, therefore, in
this case, is, was the deceased unnecessarily and without
right riding in the car with his stock at the time
of the accident? If he was, then the opinion of my asso-

ciates is correct. If he was not but was rightfully riding in that car, then, in my opinion, the case was properly submitted to the jury, and their verdict ought not to be disturbed. To determine this question, a careful examination of the contract under which he was riding is necessary. This contract contains two important provisions. One reads as follows: "It is agreed and understood that such owner or shipper shall load, feed, water, and take care of such stock at his own expense and risk, and will assume all risk of injury or damage that the animals may do themselves or to each other, or which may arise from the delay of trains." The other reads as follows: "Persons in charge of live stock, who are passed on trains with it, are so passed to take care of the stock, and must ride in the caboose attached to the train." It will be observed that by the first stipulation the deceased was required to "load, feed, water, and take care of such stock at his own expense and risk," and by the second to "ride on the caboose attached to the train." One of the cardinal rules for the construction of contracts is that the whole of the contract must be taken together, so as to give effect to every part, if practicable. Sec. 3556, Comp. Laws. What is the meaning of the expression, "take care of such stock?" It cannot mean to "load, feed, and water" them, as those duties are specifically provided for, in express terms. Taking care of them, therefore, implies other duties to be performed pertaining to the stock. Neither the court below nor this court can say judicially what that clause means, or what constitutes taking care of a partial car load of stock, in addition to loading, feeding, and watering the same while in transit. Two sections of our code, it seems to me, prescribe the rule that is to be applied in such a case:

"Section 3559. The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.

"Section 3560. Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense."

The manner in which the words we are considering are used renders them clearly technical, or as having a special meaning given to them by usage among shippers of such partial car loads of stock. This provision of the contract, therefore, could only be understood or construed by the court by ascertaining, by means of evidence, what this expression is understood to mean by those familiar with the shipping of live stock in less than car load lots. This was the view evidently taken by the learned circuit court in admitting the evidence of witnesses as to the custom or usage of shippers of this class of stock in less than car load lots, and the necessity for the shipper's riding in the car with his stock. Therefore, after the defendant had introduced the contract in evidence, and concluded its testimony, the plaintiff called witnesses to prove what was understood among shippers as constituting taking care of such stock while in transit. As an illustration, Mr. Black, after testifying as to his knowledge of the business of shipping horses in less than car load lots, was asked the question: "I will ask you if, in your judgment, it is necessary to ride with the stock, in order to take care of them, when they are thus shipped in less than car load lots. A. Yes, sir; I think it was." He was then asked why it was necessary, and his answer was: "It is very necessary, if they get down, to help them up, in starting or stopping, or one car coming in contact with another car. I found it very necessary to help them up again, so no injury would result from their being thrown down." "Now, I will ask you if it is necessary, for one to take proper care of them, to ride with them, in so shipping in less than car load lots. Yes, sir." Two or three other witnesses testified to substantially the same effect, and no attempt was made to contradict this evidence. There was also evidence tending to prove that it was a usage or custom, in shipping

less than car load lots, for the shipper to ride in the car with the stock.   Upon this evidence, can this court, or could the circuit court, say, as matter of law, that the deceased could not, under his contract, lawfully ride in the car with his stock, because, by the terms of his contract, he was required to ride in the caboose?   I think the court would have no right to so decide.   Upon this evidence as to what is required of a shipper who is bound to take care of his stock, the court should have, as it did, submitted the matter to the jury with the instruction that under the contract, if it was necessary to ride with his stock to take proper care of it, when it was so necessary he had the right to ride with his stock, and when not necessary he must ride in the caboose, and that it was for the jury to say whether or not the deceased was properly in the car with his stock when the accident occurred.   This contract may reasonably be presumed to have been prepared by the defendant, and if there was any other meaning to be given to the term used in the contract, "taking care of such stock," than that given to it by the witnesses on the part of the plaintiff, it should have shown what was generally understood by the use of this term in such contracts.

It would seem, from an examination of the cases, that railroad companies have no uniform rule in drawing this class of contracts.   In Lawson v. Railroad Co., *supra*, the shipper was required to ride in the car with his stock.   In Railroad Co. v. Dickson, 32 N. E. 380, 143 Ill. 368, the contract prohibited the shipper from riding in the same car with his stock, and required the shipper "to ride in the way car while the train was running between stops."   And no provision such as we find in the contract before us was contained in that contract, so far as the statement of facts and the opinion discloses; yet in that case a shipper injured while in the car with his horses was permitted to recover on the ground that it was necessary to protect his property for him to be in the car.   Certainly, if, under that contract, which absolutely prohibited the shipper from riding

at any time with his stock, and requiring him to ride in the way car "while the train was running between stops," and contained no clause requiring the shipper to take care of his stock, in terms, the shipper could recover, we fail to see why the plaintiff may not be allowed to recover in this case.

My conclusions are that the evidence of both use and custom among shippers of live stock in less than car load lots, that the shipper usually rides with his stock, and the evidence of the necessity for stock shippers to so ride with their stock, to take proper care of it, was properly admitted and submitted to the jury, and that under his contract, as so understood, the deceased had the lawful right to ride with his stock, when necessary, and that whether or not he was properly there at the time of the accident was a question for the jury. The jury, by their verdict, having in effect found that the deceased was properly in the car with his stock, the verdict should not be disturbed.